NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| NEW JERSEY MANUFACTURERS : | | |
| INSURANCE GROUP, a/s/o JOHN AND : | | |
| ANN BLONDINA : | | |
| : | | |
| Plaintiff, : | Civil Action No. 17-01112-BRM-TJB | |
| : | | |
| v. : | | |
| : | **OPINION** | |
| NARRANGASSETT BAY INSURANCE : | | |
| COMPANY, AMTRUST NORTH : | | |
| AMERICA INSURANCE CO., and ABC : | | |
| CORPS. 1-5 : | | |
| : | | |
| Defendants. : | | |
| _____: | | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Technology Insurance Company, Inc.'s ("TIC")[1] Motion for

Summary Judgment (ECF No. 22); (2) Narrangasset Bay Insurance Company's ("NBIC") Cross

Motion for Summary Judgment (ECF No. 23); (3) New Jersey Manufacturers Insurance Group's

("NJM") Cross Motions for Summary Judgment against TIC (ECF Nos. 24 and 26-27); and (4)

NJM's Motion for Summary Judgment against NBIC (ECF No. 25). All motions are opposed.

Having reviewed the submissions filed in connection with the motions and having heard hold oral

argument on November 2, 2018, pursuant to Federal Rule of Civil Procedure 78(a), for the reasons

set forth below and for good cause shown, NBIC's Motion for Summary Judgment (ECF No. 23)

_____

[1] TIC is the reinsurer of and successor in interest to a policy issued by Preserver Insurance
Company ("Preserver") and was improperly impleaded as AmTrust North America Insurance
Company in this matter. (ECF No. 22-3 at 1.)

is **GRANTED**; TIC's Motion for Summary Judgment (ECF No. 22) is **GRANTED**; and all of NJM's motions and cross motions (ECF Nos. 24-1, 25, 26, and 27) are **DENIED**.

## I. BACKGROUND

This is a declaratory action commenced by NJM as subrogee of its insureds, John and Ann Blondina, for a determination of liability coverage for injuries sustained to their home allegedly as a result of Eric Dunn's negligence.

### A. The Underlying Lawsuit

On October 28, 2013, NJM issued an insurance policy to the Blondinas, insuring them against "loss of or damage to their dwelling, other structures and personal property located at 119 San Carlos, Toms River, NJ 08757." (NJM's Counter SOF (ECF No. 24) ¶ 2 and TIC's Reply SOF (ECF No. 28-2) ¶ 2.) On March 15, 2014, a fire occurred at the Blondinas home. (NBIC's SOF (ECF No. 23-1 ¶ 2) and NJM's Resp. to NBIC's SOF (ECF No. 29- 1) at 1.) "At some time prior to the fire, Eric Dunn, a neighbor, parked a 2013 Toyota Tacoma pickup truck in the driveway of the Blondina home."[2] (ECF No. 23-1 ¶ 3 and ECF No. 29-1 at 1.) A fire erupted in the bed of the pickup truck and eventually spread to the Blondina home.[3] (ECF No. 23-1 ¶¶ 4-5 and ECF No. 29-1 at 1.) The truck was covered with a piece of plywood to protect it from being scratched or scraped by material being transported in the truck and there was a rack made of plywood installed in the bed of the truck for the purposes of transporting fishing equipment. (ECF No. 23-1 ¶¶ 6-7 and ECF No. 29-1 at 1.) The Ocean County Fire Marshall found remnants of the rack on the floor of the bed of the truck. (ECF No. 23-1 ¶ 8 and ECF No. 29-1 at 1.) The fire resulted in $424,992.97

---

[2] Whether Eric Dunn had permission to park in the Blondinas' driveway is in dispute, however, as will be seen below it is immaterial to the Court's decision.

[3] How the fire began or eventually spread to the home is in dispute by the parties, but not germane to the adjudication of this motion.

in damages to the home, which was paid by NJM to the Blondinas. (ECF No. 24 ¶ 4 and ECF No.28-2 ¶ 4.)

It is undisputed that the 2013 Toyota Tacoma was registered to Allen Dunn, Eric Dunn's father. (ECF No. 23-1 ¶ 9 and ECF No. 29-1 at 1.) (ECF No. 22-1 at 9 and ECF No. 24-1 at 12.) The vehicle was insured by GEICO to Genevieve and Allan Dunn, Eric Dunn's parents, identifying Eric Dunn as an additional driver. (ECF No. 23-1 ¶ 10 and ECF No. 29-1 at 1.) The GEICO policy contained limits of $100,000 for property damage. (ECF No. 23-8 at 3.) NJM filed a complaint, as subrogee of John and Ann Blondina, against Allen, Eric, and Genevieve Dunn in the Superior Court, Monmouth County. (ECF No. 23-1 ¶ 12 and ECF No. 29-1 at 1.) GEICO provided a defense to the defendants in that matter, while NBIC and TIC denied coverage.[4] (ECF No. 23-8 at 3.) Ultimately, NJM entered into a settlement agreement with Genevieve and Allan Dunn in exchange for the GEICO policy limit of $100,000. (*Id.*) NJM also settled their liability claim against Eric Dunn in exchange for a judgment against him in the amount of $324,992.97. (ECF No. 23-1 ¶ 21; ECF No. 29-1 at 1; ECF No. 24 ¶ 6; ECF No. 28-2 ¶ 6.) Per the terms of the settlement agreement with Eric Dunn, Eric Dunn assigned to NJM his right to proceed against NBIC and TIC for a determination of liability, and NJM agreed not to take any action of any kind to collect on the judgment against Eric Dunn. (ECF No. 23-1 ¶ 23; ECF No. 29-1 at 1; ECF No. 24 ¶ 6; ECF No. 28-2 ¶ 6.) The settlement agreement further provides:

> 5) **No Admission of Liability.** The parties each acknowledge and agree that the matter set forth in this Agreement constitute the settlement and compromise of disputed claims, and that this Agreement is not an admission or evidence of liability by any of them regarding any claim, except as may flow from the settlement judgment.

---

[4] Eric Dunn's relationship with NBIC and TIC will be discussed in more detail below.

(ECF No. 23-1 ¶ 26 and ECF No. 29-1 at 1.) As a result of the settlement with Eric Dunn, NJM filed this declaratory action for a finding of liability coverage in the underlying action against NBIC and TIC. (ECF No. 1.)

**B. NBIC**

NBIC issued a homeowner's policy to Genevieve and Allen Dunn insuring their home at 116 San Carlos Street in Toms River, New Jersey. (ECF No. 123-1 ¶ 16 and ECF No. 29-1 at 1.) It identified the "[i]nsured" to include residents of the name insured's household who are relatives. (ECF No. 29-1 ¶ 13 and ECF No. 30 ¶ 13.) The NBIC policy affords personal liability:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applied, we will:
>
> 1. Pay up to our limit for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend end when our limit of liability for the "occurrence" has been exhausted by payment of a judgment tor settlement.

(ECF No. 23-10 at 33.) However, the NBIC homeowner's policy excludes coverage for "Motor Vehicle Liability." (*Id.* at 34.) "Motor vehicle Liability" is defined in the NBIC policy, in part, as:

> Liability for "bodily injury" or "property damage" arising out of the:
>
> 1) Ownership of such vehicle or craft by an "insured";
>
> 2) Maintenance, occupancy, operation, use, loading, or unloading of such vehicle or craft by any person.

(ECF No. 23-10 at 1.)

The NBIC homeowner's policy was in effect on March 15, 2014, the date of the fire, and provides coverage for property damage caused by an occurrence in the amount of $500,000. (ECF

No. 29-1 at ¶ 12 and ECF No. 30 ¶ 12.) Moreover, the parties agree Eric Dunn was residing at the household owned by his parents on March 15, 2014. (ECF No. 29-1 ¶ 19 and ECF No. 30 ¶ 19.) NJM argues the "negligent trespass of Eric Dunn [onto the Blondinas property] was a contributing occurrence of the fire" and therefore NBIC is obligated to indemnify Eric Dunn for the judgment NJM obtained against it. (ECF No. 29-1 ¶ 40.)

**C. TIC**

TIC is the reinsurer of and successor in interest to the policy issued by Preserver. (ECF No. 22-3 at 1.) Preserver issued a commercial automobile policy (the "Preserver Policy") to Allen Dunn for the period of September 8, 2013, to September 8, 2014. (ECF No. 22-3 ¶ 1 and ECF No. 24 ¶ 1.) On January 27, 2014, "a 'CUT-THROUGH ENDORSEMENT' was placed on the Preserver Policy that states that [TIC] assumes responsibility for the Preserver Policy on the insolvency of Preserver and that [TIC] will be responsible for all payments due on claims covered under the policy." (ECF No. 22-3 ¶ 2 and ECF No. 24 ¶ 2.) The Preserver Policy identified Allen Dunn as the "Named Insured" and an "individual" with an address of 78 Kiel Avenue, Butler, New Jersey, and his business as "delivery of paper product." (ECF No. 22-3 ¶ 3 and ECF No. 24 ¶ 3.)

The Insuring Agreement for Liability Coverage states in part: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (ECF No. 22-3 ¶ 13 and ECF No. 24 ¶ 13.) "Auto" means "a land motor vehicle, 'trailer' or semitrailer designated for travel on public roads but does not include 'mobile equipment." (ECF No. 24 ¶ 15 and ECF no. 28-2 ¶ 15.) Who qualifies as an "insured" for Liability Coverage is defined as follows:

The following are "Insureds":

   a.  You for any covered "auto".

   b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

     (1)  The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

     (2)  Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

     (3)  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

     (4)  Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

     (5)  A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

   c.  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(ECF No. 22-3 ¶ 14 and ECF No. 24 ¶ 14.)

  The Declarations of the Preserver Policy contain "ITEM TWO – SCHEDULE OF COVERAGES AND COVERED AUTOS" which states:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

(ECF No. 22-3 ¶ 4 and ECF No. 24 ¶ 4.) The Declaration states only autos coming within "Covered Autos Symbols," which includes symbols 7, 8 and 9, are "covered autos" for liability coverage.

(ECF No. 22-3 ¶ 5and ECF No. 24 ¶ 5.) SECTION I – COVERED AUTOS of the Business Auto

Coverage Form of the Preserver Policy states:

> SECTION I – COVERED AUTOS
>
> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos that are covered autos."

(ECF No. 22-3 ¶ 6 and ECF No. 24 ¶ 6.) Covered Auto Symbol 7 is for "Specifically Described

'Autos,'" defined as: "Only those 'autos' described in Item Three of the Declarations for which a

premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached

to any power unit described in Item Three)." (ECF No. 22-3 ¶ 7 and ECF No. 24 ¶ 7.)  Covered

Auto Symbol 8 is for "Hired 'Autos' Only," defined as: "Only those 'autos' you lease, hire, rent

or borrow. This does not include any 'auto' you lease, hire, rent, or borrow from any of your

'employees', partners (if you are partnership), members (if you are a limited liability company) or

members of their households." (ECF No. 22-3 ¶ 8 and ECF No. 24 ¶ 8.) Covered Auto Symbol 9

is for "Non-owned 'Autos' Only" defined as:

> Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes 'autos' owned by your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or members of their household but only while used in your business or your personal affairs.

(ECF No. 22-3 ¶ 9 and ECF No. 24 ¶ 9.)

When the Preserver Policy was issued, the Declarations contained a section entitled "ITEM

THREE – SCHEDULE OF COVERED AUTOS YOU OWN," identifying only one vehicle owned

by Allen Dunn, a 2007 Ford LCF ("Ford LCF"), a medium truck designed for specialized delivery.

(ECF No. 22-3 ¶ 10 and ECF No. 24 ¶ 10.) On May 30, 2014, the Preserver Policy was amended

to delete the Ford LCF as a "covered auto" and to add a 2007 Freightliner M2 106 Truck ("Freightliner"). (ECF No. 22-3 ¶ 11 and ECF No. 24 ¶ 11.) These two vehicles were the only vehicles for which Allen Dunn paid a premium for Liability Coverage provided by the Preserver Policy. (ECF No. 22-3 ¶ 12 and ECF No. 24 ¶ 12.)

The Preserver Policy was endorsed with an "INDIVIDUAL NAMED INSURED" endorsement, modifying insurance provided under Business Auto Coverage Form, which states in part:

> If you are an individual, the policy is changed as follow:
>
> A.      Changes In Liability Coverage
> . . .
> 2.      Personal Auto Coverage
> While any "auto" you own of the "private passenger type" is a covered "auto" under liability Coverage:
>
>> a.      The following is added to Who Is An Insured: "Family members" are "insureds" for any covered "auto" you own of the "private passenger type" and any other "auto" described in Paragraph 2.b. of this endorsement
>> b.      Any "auto" you don't own is a covered "auto" while being used by you or any "family member" except:
>>> (1)      Any "auto" owned by any "family members".
>>> (2)      Any "auto" furnished or available for your or any "family member's" regular use.

(ECF No. 22-3 ¶ 15 and ECF No. 24 ¶ 15.) "Family Members" means "a person related to you by blood, marriage or adoption who is a resident of your household." (ECF No. 24 ¶ 31 and ECF No. 28-2 ¶ 31.) "When the phrase 'private passenger type' appears in quotation marks it includes any covered 'auto' you own of the pickup or van type not used for business purposes, other than farming or ranching." (ECF No. 24 ¶ 32 and ECF No. 28-2 ¶ 32.) A "Non-owned auto" means any "'private passenger type' 'auto', pick-up, van or 'trailer' not owned by or furnished or available

for the regular use of you or any 'family member', while it is in the custody of or being operated by you or any 'family member.'" (ECF No. 24 ¶ 34 and ECF No. 28-2 ¶ 34.)

Notably, the Preserver Policy was in effect on March 15, 2014, at the time of the fire, and provides an endorsement that provided underinsured motorist coverage within limits of liability of $500,000. (ECF No. 24 ¶ 11 and ECF No. 28-2 ¶ 11.) Now, NJM alleges Eric Dunn was an "insured" under the Preserve Policy and that the 2013 Toyota Tacoma allegedly causing the fire at the Blondinas home was a "covered auto," therefore, Preserve is obligated to indemnify Eric Dunn for the judgment NJM obtained against it. (ECF No. 22-3 ¶ 21 and ECF No. 24 ¶ 21.)

### D. Procedural History

On February 17, 2017, NJM filed an initial Complaint against NBIC. (ECF No. 1.) On May 16, 2017, they filed an Amended Complaint against NBIC and TIC. (ECF No. 11.) On June 20, 2018, TIC filed a Motion for Summary Judgment. (ECF No. 22.) On July 20, 2018, NBIC filed a Cross Motion for Summary Judgment. (ECF No. 23.) On that same day, NJM filed a Motion for Summary Judgment against NBIC and a Cross Motion against TIC. (ECF Nos. 24 and 25.) On July 23, 2018, NJM filed a Cross Motion for Summary Judgment against TIC. (ECF No. 26.) All motions are opposed, and the Court heard oral argument on November 2, 2018.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*,

455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* (Brennan, J., dissenting). Once

the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

III.   DECISION

   A. **General Principles Governing a Duty to Defend and Indemnify and General Principles Interpreting Insurance Policies**

NJM argues NBIC and TIC's refusal to defend Eric Dunn in the underlying action was improper; and therefore, they are liable for the judgment against and settlement made by Eric Dunn. Accordingly, the Court will begin its analysis with the principles governing an insurer's duty to defend and indemnify.

An "insurer's duty to defend is typically broader than its duty to indemnify." *Grand Cove II Condo. Ass'n, Inc. v. Ginsberg*, 676 A.2d 1123, 1130 (N.J. Super. Ct. App. Div. 1996). For example,

> [t]he insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obliged to pay.

*Hartford Ins. Grp. v. Marson Constr. Corp.*, 452 A.2d 473, 474 (N.J. Super. Ct. App. Div. 1982), *certif. denied*, 460 A.2d 656 (N.J. 1983). The Supreme Court has held that "the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 483 A.2d 402, 405 (N.J. 1984).

An insurer's "duty to defend is determined by comparing the allegations in the complaint with the language of the policy." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992). "[T]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." *Danek v. Hommer*, 100 A.2d 198, 203 (N.J. Super. Ct. App. Div. 1953), *aff'd*, 105 A.2d 677 (N.J. 1954). While the duty to defend is broader than the duty to indemnify, it "is not broader in the sense that it extends to claims not covered by the covenant to pay." *Grand Cove II Condo. Ass'n, Inc.*, 676 A.2d at 1130 (citation omitted).

Because the duty to defend requires the Court to interpret insurance policies, the Court will articulate the fundamental rules for interpreting insurance policies. "As contracts of adhesion, such policies are subject to special rules of interpretation." *Longobardi v. Chubb Ins. Co. of N.J.*, 582

A.2d 1257, 1260 (N.J. 1990). "[P]olicies should be construed liberally in [the insured's] favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." *Id.* (citation omitted). "Notwithstanding that premise, the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Id.* If there is an ambiguity, it should be decided in favor of the insured. *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017). In addition, the doctrine of reasonable expectations allows "the insured's reasonable expectations . . . to bear on misleading terms and conditions of insurance contracts and genuine ambiguities are resolved against the insurer." *Id.* (citations omitted). Nevertheless, a court "should not write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 562 A.2d 208, 214 (N.J. 1989). The burden of establishing that coverage exists under an insurance policy rests with the party seeking coverage. *Hartford Acc. & Indem. Co.*, 483 A.2d at 408.

"Exclusionary clauses are presumptively valid and are enforced if they are specific, plain, clear, prominent, and not contrary to public policy." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (2010). If the words in an exclusion are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 582 A.2d at 1260. "In general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41, 713 A.2d 1007 (1998) (citation omitted). Therefore, exclusions are traditionally construed against the insurer, and if there is more than one possible interpretation, courts should apply the interpretation that supports coverage. *Flomerfelt*, 997 A.2d at 997. "Nonetheless, courts must be careful not to disregard the clear import and intent of a policy's exclusion, . . . and we do not

suggest that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Id.* Instead, "courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Id.* As such, "if the exclusion uses terms that make it plain that coverage is unrelated to any causal link, it will be applied as written." *Id.*

"Where an insurer wrongfully refuses coverage and a defense to its insured, so that the insured is obligated to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him." *Baen v. Farmers Mut. Fire Ins. Co. of Salem Cty.*, 723 A.2d 636, 640 (N.J. Super. Ct. App. Div. 1999). If an insurer has no duty to defend, "it is clear . . . [it] would also have had no duty to indemnify since it is only an obligation to indemnify, either actual or potential, which invokes the duty to defend." *Hartford Ins. Grp. v. Marson Const. Corp.*, 452 A.2d 473, 476 (N.J. Super. Ct. App. Div. 1982); *E. Coast Residential Assocs., LLC v. Builders Firstsource-Ne. Grp., LLC*, No. A-4808-09T1, 2012 WL 75146, at *4 (N.J. Super. Ct. App. Div. Jan. 11, 2012) (finding that because nothing in the complaint or evidence relates to claims for damage within coverage, the insurer did not have a duty to defend or indemnify). However, a determination that one has a duty to defend "cannot be dispositive of the existence of its duty to indemnify in whole or in part since we cannot assume the actual state of facts and, indeed, the actual state of facts was not adjudicated since the underlying action resulted in settlement." *Id.*

### 1. NJM vs. NBIC

NBIC argues it was not required to defend Eric Dunn in the underlying action and is not required to indemnify Eric Dunn because the property damage that occurred to the Blondinas dwelling arose "out of the ownership, maintenance or use" of a vehicle, which is an exclusion to their policy. (ECF No. 23-2 at 1; ECF No. 30 at 5; ECF No. 33 at 2.) NJM argues NBIC's refusal

to defend Eric Dunn in the underlying action was improper; and therefore, NBIC is liable for the judgment against and settlement made by Eric Dunn. (ECF No. 25-1 at 12-13.) It further argues NBIC had a duty to indemnify Eric Dunn. (ECF No. 25-1 at 12.) Specifically, it argues NBIC had a duty to defend because the Motor Vehicle Exclusion did not apply because Eric Dunn's use of the truck was merely incidental to the property damage sustained by the Blondinas. (ECF No. 25-1 at 6-12; ECF No. 29 at 4.)

The Court finds NBIC did not have a duty to defend Eric Dunn in the underlying action, and therefore, properly refused to defend him and is not liable for the litigation costs, the judgment determination, and/or the settlement amount. *Hartford Ins. Grp.*, 452 A.2d at 476.

The NBIC policy affords personal liability:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applied, we will:
>
> 2. Pay up to our limit for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
> 3. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend end when our limit of liability for the "occurrence" has been exhausted by payment of a judgment tor settlement.

(ECF No. 23-10 at 33.) However, the NBIC homeowner's policy excludes coverage for "Motor Vehicle Liability." (*Id.* at 34.) "Motor vehicle Liability" is defined in the NBIC policy, in part, as:

> Liability for "bodily injury" or "property damage" arising out of the:
>
> . . .
>
> Maintenance, occupancy, operation, use, loading, or unloading of such vehicle or craft by any person.

(ECF No. 23-10 at 1.) Here, NBIC does not dispute Eric Dunn was an insured under the policy. Instead, it argues the property damage to the Blondina home falls within the Motor Vehicle Liability exclusion because it arose out of the "use" of the 2013 Toyota Tacoma. The parties disagree as to the phrase "arising out of" the "use" of a vehicle.

As a preliminary matter, the language in the automobile policies (GEICO and TIC) and NBIC's homeowner's policy are mutually exclusive. NBIC's homeowner's policy is designed to exclude the coverage provided under language in the standard family automobile policy for damages arising out of the use of the motor vehicle. *See Westchester Fire Ins. Co. v. Cont'l Ins. Companies*, 312 A.2d 664, 671 (N.J. Super. Ct. App. Div. 1973), *aff'd*, 319 A.2d 732 (N.J. 1974). Therefore, if the liability arises out of the use of a vehicle, it may fall within coverage afforded by an automobile policy but outside the coverage afforded by NBIC's homeowner's policy. *Id.*

The specific inquiry here is whether the fire to the Blondina home arose out of Eric Dunn's use of the 2013 Toyota Tacoma. Courts have interpreted "arising out of" in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. *Westchester Fire Ins. Co.*, 312 A.2d at 669; *Conduit & Found. Corp. v. Hartford Cas. Ins. Co.*, 746 A.2d 1053, 1058 (N.J. Super. Ct. App. Div. 2000) ("In the context of whether an automobile policy provides coverage for personal injury, it is, by now, universally understood that the words 'arising out of' are interpreted in a broad and comprehensive sense to mean 'origination from' or 'growing out of' the use of the automobile." (citation omitted)); *Allstate Ins. Co. v. Moraca*, 581 A.2d 510, 514 n.1 (N.J. Super. Ct. App. Div. 1990). ("[I]n order to fall under the ambit of 'arising out of the use' it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile."). The phrase "arising out of" is not "synonymous" with "while riding." *Id.* Instead,

> there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect hose insured under the policy would be protected.

*Id.*; *Penn Nat. Ins. Co. v. Costa*, 966 A.2d 1028, 1034 (N.J. 2009) (holding that "in order to determine whether an injury arises out of the maintenance, operation or use of a motor vehicle thereby triggering automobile insurance coverage, there must be a substantial nexus between the injury suffered and the asserted negligent maintenance, operation or use of the motor vehicle"); *Diehl v. Cumberland Mut. Fire Ins.*, 686 A.2d 785 (N.J. Super. Ct. App. Div.) (applying substantial nexus test to conflict between homeowners insurance policy and automobile insurance policy), *certif. denied*, 693 A.2d 112 (N.J. 1997); *Bellafronte v. Gen. Motors Corp.*, 376 A.2d 1294 (N.J. Super. Ct. App. Div. 1977) (also applying substantial nexus test to conflict between automobile insurance policy and general liability policy). The word "'use' denotes its employment for some purpose of the user; the word 'operation' denotes the manipulation of the car's controls in order to propel it as a vehicle." *Id.* at 668.

In *Diehl*, much like this matter, the court was required to determine whether coverage should be afforded under an automobile policy or homeowner's policy. The homeowner's policy expressly excluded coverage for injuries arising out of the "maintenance, operation, ownership, or use . . . of any . . . motor vehicle . . . owner or operated by . . . any insured." *Diehl*, 686 A.2d at 787. In that matter,

> Plaintiff Richard Diehl was driving away from his home when he noticed his brother George Diehl approaching in a pickup truck. Richard pulled over to the side of the road. He got out of his vehicle, walked around the rear of the truck and was bitten in the face by George's dog, which was in the open cargo area of the pickup truck.

686 A.2d at 786. Ultimately, the court determined:

> [A]utomobile liability insurance should cover this injury caused by a dog bite to the face occurring while the dog was in the open rear deck of a pickup truck because it arose out of the use of the vehicle to transport the dog. Moreover, the bite incident was facilitated by the height and open design of the deck. In our view the act was a natural and foreseeable consequence of the use of the vehicle, and there was a substantial nexus between the dog bite and the use of the vehicle at the time the dog bit the plaintiff.

*Id.* at 788.

In *Bartels v. Romano*, 407 A.2d 1248, 1249 (N.J. Super. Ct. App. Div. 1979), the court found there was no homeowner coverage for injuries arising out of an accident that occurred when a car parked in a driveway unexpectedly rolled backwards and struck the plaintiffs, who were playing in the driveway. In determining whether the automobile policy or the homeowner's policy was applicable to the negligent supervision claim, the court viewed the issue to be "whether the injury sustained arose out of the use of the automobile." *Id.* Irrespective of what might be the causative role of the homeowner's negligence, the court found the injuries were a consequence of the use of the automobile. *Id.* at 1250 (finding that "the rolling of the automobile down the sloping driveway with the Romano children in occupancy was a consequence of the use of the automobile, and encompassed by the automobile policy coverage").

In *Penn*, the plaintiff offered to assist his employer in changing a tire on a pickup truck parked in the driveway in front of the employer's home. *Penn Nat. Ins. Co.*, 966 A.2d at 1029. The employer declined his offer, but as he headed off, he slipped on ice or snow on the driveway, and struck his head on the bumper jack the employer was using to lift the truck. *Id.* The Court held there was no substantial nexus between the maintenance of the truck by the employer and the plaintiffs fall because the injury occurred as a result of the employer's failure to keep his driveway

clear of ice rather than the vehicle's maintenance. *Id.* at 1035. The court found the fact that he struck his head on the bumper jack being used to repair the flat tire to be "an unfortunate but entirely incidental happenstance to the maintenance activity [the employer] was performing on his truck." *Id.* The Court noted that "[w]hen an accident . . . is occasioned by negligent maintenance of the premises and the only connection to that event is the fact that the motor vehicle [is] present . . . no realistic social or public policy is served by straining to shift coverage." *Id.* at 1031.

In *Colon v. Liberty Mut. Ins. Co.*, No. A-5224-09T2, 2012 WL 163230, at *1 (N.J. Super. Ct. App. Div. Jan. 20, 2012), the plaintiff and a patrolman of the Lawnside Police Department responded to a domestic dispute call, which required the officers to search for someone involved in the dispute, who had driven off. *Id.* Approximately two hours later, the vehicle was spotted. *Id.* The officers approached the car and directed the driver to place her keys on top of the vehicle, but she refused to do so. *Id.* The keys were attached to a "drawstring," therefore, an officer went to get scissors to cut the drawstring in order to get the keys. *Id.* As the officer was returning, the driver "kicked the door open" and moved towards the other officer, swinging her hands and kicker her. *Id.* She also bit the officer's arm, causing the officer to bleed heavily. *Id.* The altercation between the officers and driver took place about "a car length" away from the driver's car. *Id.* The court found "there was no substantial nexus between [the driver's] use of the automobile and plaintiff's injuries. Unquestionably, plaintiff's injuries were sustained after she stopped [the driver's] vehicle, but Green's assault upon the two officers occurred outside the automobile and was not 'a natural and reasonable incident or consequence of the use of the automobile.'" *Id.* at 5.

The Court finds *Constitutional Cas. Co. v. Soder*, 667 N.E.2d 574 (Ill. 1996) persuasive. In *Constitutional*, Joan was babysitting Veronica and Anthony. *Id.* at 575. She arranged to drop Anthony off at his home and then drive Veronica to the park. *Id.* When she went to return Anthony

to his parents, she left Veronica in the car. *Id.* During that time the car caught fire and Veronica

was burned. *Id.* The cause of the fire was unknown. *Id.* The automobile insurer refused to defend

the matter because it argued the injuries did not arise out of the use and maintenance of the insured

vehicle. *Id.* at 576. The court found the policy provision "arising out of the . . . use . . . of the owned

automobile" obliged the automobile insurance company to defend the underlying suit. *Id.* at 577.

Specifically, it found:

> the underlying complaint states a cause of action based on the
> alleged negligence of Joan in using the car to run a brief errand, *viz.*,
> Joan's use of the automobile in transporting and/or dropping off the
> children and her leaving of Veronica in the car for a moment. We
> agree with the Tasker court's reasoning that "[l]eaving one's child
> in a motor vehicle during a brief errand, ostensibly for safety as well
> as convenience, is reasonably consistent with the inherent nature of
> the vehicle . . ." and, therefore, within the meaning of the term "use"
> in the policy.

*Id.*

The Court addresses, then, the application of the above cases to the circumstances

presented in this case. NBIC had no duty to defend Eric Dunn. Instead, an automobile liability

insurance should cover this property damage caused by a fire occurring in the bed of the 2013

Toyota Tacoma pick-up truck because it arose out of the use of the vehicle, using the 2013 Toyota

Tacoma as an ashtray/to smoke cigarettes and using the vehicle to transport fishing equipment. In

fact, the underlying complaint explicitly alleged Eric Dunn was smoking while driving his vehicle:

> 11. Upon information and belief, defendant, Eric Dunn smokes
> cigarettes.
>
> 12. Upon information and belief, prior to parking the vehicle at the
> Blondina property, was smoking while driving his vehicle.
>
> 13. Sometime after the [sic] Eric parked the vehicle, a fire erupted
> in the bed of the subject pick-up truck.
>
> 14. The fire spread from the bed of the truck to the Blondina home.

(ECF No. 25-9 ¶¶ 11- 14.)

As such, the property damage sustained on the Blondina home clearly arose out of the use of the 2013 Toyota Tacoma, not the incidental trespass of Eric Dunn on to the Blondina property. Moreover, much like in *Diehl*, the fire was facilitated by the plywood in the bed of the truck used to transport fishing equipment. In fact, NJM admits "[t]he underlying factual record indisputably demonstrates that a fire originated in the bed of the Toyota Tacoma." (ECF No. 31 at 3.) It further admits the truck was "*a fuel package*, the ignition of which resulted in much greater property damage as a result of Eric Dunn's trespass." (ECF No. 29 at 8 (emphasis added).) The Court further finds the fire was a natural and foreseeable consequence of the use of the vehicle and there was a substantial nexus between the fire and the use of the vehicle.

This case is clearly distinguishable from *Penn* and *Colon*. Unlike *Penn*, where the court found the employer striking his head on the bumper jack, being used to repair the flat tire, to be "an unfortunate but entirely incidental happenstance," the property damage here occurred because of the fire that indisputably erupted on the bed of the 2013 Toyata Tacoma and as a consequence of the use of the automobile as an ashtray and to transport finishing equipment. Eric Dunn's trespass onto the Blondinas' property was merely incidental to the fire. In addition, unlike *Colon*, where the court found there was no substantial nexus between the driver's use of the vehicle and biting the officer outside the vehicle, the fire here erupted on the vehicle as a consequence of Eric Dunn smoking in the vehicle and containing plywood in the vehicle.

Because an insurer's "duty to defend is determined by comparing the allegations in the complaint with the language of the policy," *Voorhees*, 607 A.2d at 1259, and courts have interpreted the phrase "arising out of the use" broadly, the Court finds NBIC had no duty to defend Eric Dunn, and consequently has no duty to indemnify him either. *See Hartford Ins. Grp.*, 452

A.2d at 476 (finding that, if an insurer has no duty to defend, "it is clear . . . [it] would also have had no duty to indemnify since it is only an obligation to indemnify, either actual or potential, which invokes the duty to defend"); *E. Coast Residential Assocs., LLC*, 2012 WL 75146, at *4 (finding that because nothing in the complaint or evidence relates to claims for damage within coverage, the insurer did not have a duty to defend or indemnify). Accordingly, NBIC's Motion for Summary Judgment (ECF No. 23) is **GRANTED** and NJM's Motion for Summary Judgment (ECF No. 25) is **DENIED**.

### 2. NJM vs. TIC

NJM argues TIC had a duty to defend and has a duty to indemnify Eric Dunn for the settlement because he was an insured under the policy and the 2013 Toyota Tacoma was a covered auto under the "private passenger type" endorsement. (ECF No. 24- at 12-14.) TIC argues the 2013 Toyota Tacoma was not a "covered auto" under the Preserver Policy and that Eric was not an "insured" under the policy. (ECF No. 22-1 at 12-18.)

It is well-established in New Jersey that automobile policies only provide coverage for "covered autos." *See Webb v. AAA Mid-Atl. Ins. Grp.*, 348 F. Supp. 2d 324, 329 (D.N.J. 2004) (holding the policy only provides coverage for a "named insured" using a "covered auto"); *Cassilli v. Soussou*, 973 A.2d 986, 993 (N.J. Super. Ct. App. Div. 2009) (finding that "[b]ecause Soussou's Chevy Venture was not a 'covered auto' and he was not designated a named insured, we are satisfied his circumstances and status fall squarely within the exclusionary language of the Selective policy"); *Konopelski v. State Farm Mut. Auto. Ins. Co.*, 455 A.2d 516, 517 (N.J. Super. Ct. App. Div. 1982) (concluding the insuring agreement in the policy requiring the accident involve a covered vehicle to be "clear and unambiguous"). It is equally accepted that coverage under a commercial automobile policy only extends to someone who qualifies as an "insured"

under the policy. *See Murawski v. CNA Ins. Co.*, 874 A.2d 530, 532 (N.J. 2005) (stating the plaintiff qualified as an "insured" under the policy because he was "occupying a covered auto at the time of the accident"). Insured status only extends to someone other than a named insured if they are riding in a "covered auto." *See Dickson v. Selective Ins. Grp., Inc.*, 833 A.2d 66, 71-72 (N.J. Super. Ct. App. Div. 2003), *certif. denied*, 833 A.2d 66 (N.J. 2004); *Clegg v. New Jersey Auto. Full Underwriting Ass'n By & Through Cigna Ins. Co.*, 604 A.2d 179, 182 (N.J. Super. Ct. App. Div. 1992) (finding a person other than the name insured is entitled to UIM Coverage "only as an occupant of a vehicle covered by the policy").

Indeed, "[t]he purpose of a policy's exclusionary clause is to allow an insurer to protect itself from covering all automobiles available to the insured's use, even if the policy was bought for one automobile." *Silverman v. DiGiorgio*, No. A-4542-16T2, 2018 WL 1569508, at *2 (N.J. Super. Ct. App. Div. Apr. 2, 2018) (citing *Am. Cas. Co. v. Lattanzio*, 188 A.2d 637, 640-41 (N.J. Ch. Div. 1963)). In fact, NJM has repeatedly argued same and that automobile policies do not apply to vehicles that are not "covered autos." *See Silverman*, 2018 WL 1569508 at 2 (upholding NJM policy exclusion for any vehicle "other than your covered auto, which is owned by you"); *DiOrio v. New Jersey Mfrs. Ins. Co.*, 398 A.2d 1274, 1280 (N.J. 1979). In *DiOrio*, the Court stated:

> The definition of "non-owned automobile" contained in the NJM policy, which has the effect here of excluding coverage of the DeSoto, reflects a simple though important purpose: to prevent an insured from obtaining coverage for some or all cars regularly used or owned by the insured by merely listing only one automobile in the family policy (in this case the Chrysler) and thereafter paying a premium calculated by the insurer upon the risk created by the ownership and use of only that one listed car.

398 A.2d at 1280.

The Court finds that when read as a whole, there is nothing ambiguous in the Preserver Policy regarding coverage. The Preserver Policy states it "will pay all sums an 'insured' legally

must pay as damages" . . . "caused by 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (ECF No. 24-5 at 16.) The 2013 Toyota Tacoma was never a covered auto and Eric Dunn is not an insured under the policy.

Who qualifies as an "insured" for Liability Coverage is defined as follows:

The following are "Insureds":

a. You for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
  (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
  (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
  (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
  (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
  (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(ECF No. 22-3 ¶ 14 and ECF No. 24 ¶ 14.) Here, the parties agree, aside from the "private passenger type" argument, there could only be three ways the 2013 Toyota Tacoma can qualify as a "covered auto" in the Preserver Policy, which is through Covered Auto Symbols 7, 8, and 9 contained in the "Business Auto Coverage Form, Section I - Covered Autos." (ECF No. 24-5 at

24

15.) The Declarations of the Preserver Policy, "ITEM TWO – SCHEDULE OF COVERAGES AND COVERED AUTOS," states:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

(ECF No. 22-3 ¶ 4 and ECF No. 24 ¶ 4; ECF No. 24-5 at 6.) The Declaration states only autos coming within "Covered Autos Symbols" 7, 8 and 9 are "covered autos" for liability coverage. (ECF No. 22-3 ¶ 5and ECF No. 24 ¶ 5.) "SECTION I – COVERED AUTOS" of the "BUSINESS AUTO COVERAGE FORM" of the Preserver Policy identifies and defines the Covered Auto Symbols:

> SECTION I – COVERED AUTOS
>
> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos that are covered autos."

 (ECF No. 22-3 ¶ 6; ECF No. 24 ¶ 6; ECF No. 24-5 at 15.)

Covered Auto Symbol 7 is for "Specifically Described 'Autos,'" defined as: "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." (ECF No. 22-3 ¶ 7 and ECF No. 24 ¶ 7.) When the Preserver Policy was initially issued it identified only one vehicle owned by Allen Dunn, the Ford LCF. (ECF No. 22-3 ¶ 10 and ECF No. 24 ¶ 10.) On May 30, 2014, the Preserver Policy was amended to delete the Ford LCF as a "covered auto" and to add the Freightliner. (ECF No. 22-3 ¶ 11 and ECF No. 24 ¶ 11.)  These two vehicles were the only vehicles for which Allen Dunn paid a premium for Liability Coverage

provided by the Preserver Policy. (ECF No. 22-3 ¶ 12 and ECF No. 24 ¶ 12.) The 2013 Toyota Tacoma was never so identified or described, and Allen Dunn did not pay a premium for it. Therefore, it was not a "Specifically Described 'Auto'" within the meaning of Covered Auto Symbol 7.

Second, Covered Auto Symbol 8 is for "Hired 'Autos' Only," defined as: "Only those 'autos' you lease, hire, rent or borrow. This does not include any 'auto' you lease, hire, rent, or borrow from any of your 'employees', partners (if you are partnership), members (if you are a limited liability company) or members of their households." (ECF No. 22-3 ¶ 8 and ECF No. 24 ¶ 8.) Third, Covered Auto Symbol 9 is for "Non-owned 'Autos' Only" defined as:

> Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or members of their household but only while used in your business or your personal affairs.

(ECF No. 22-3 ¶ 9 and ECF No. 24 ¶ 9.) The parties agree that Allen Dunn owned the vehicle. (ECF No. 24-1 at 13.) Consequently, the vehicle is neither a "Hired Auto" or a "Non-owned Auto." As such, it is also not a Covered Auto under symbols 8 or 9.

Nevertheless, NJM argues Eric Dunn is an insured, and coverage is afforded under the Preserver Policy by virtue of the "Individual Named Insured Endorsement," "private passenger type." (ECF No. 24-1 at 10-15 and ECF No. 27 at 10-15.) Specifically, NJM argues the endorsement "expands the universe of covered 'autos' for Liability Coverage beyond the "Description of Covered Auto Designation Symbols." (ECF No. 24-1 at 11.)

The Preserver Policy endorsement states in pertinent part:

> If you are an individual, the policy is changed as follow:

> A.    Changes In Liability Coverage

. . .

2.　　　Personal Auto Coverage

While any "auto" you own of the "private passenger type" *is a covered "auto" under liability Coverage*:

> a.　　　The following is added to Who Is An Insured: "Family members" are "insureds" for *any covered "auto"* you own of the "private passenger type" and any other "auto" described in Paragraph 2.b. of this endorsement
>
> b.　　　Any "auto" you don't own is a covered "auto" while being used by you or any "family member" except:
>
> > (1)　　　Any "auto" owned by any "family members".
> >
> > (2)　　　Any "auto" furnished or available for your or any "family member's" regular use.

(ECF No. 22-3 ¶ 15 and ECF No. 24 ¶ 15 (emphasis added).) "Family Members" means "a person related to you by blood, marriage or adoption who is a resident of your household." (ECF No. 24 ¶ 31 and ECF No. 28-2 ¶ 31.) "When the phrase 'private passenger type' appears in quotation marks it includes *any covered 'auto'* you own of the pickup or van type not used for business purposes, other than farming or ranching." (ECF No. 24 ¶ 32 and ECF No. 28-2 ¶ 32 (emphasis added).) A "Non-owned auto" means any "'private passenger type' 'auto', pick-up, van or 'trailer' *not owned* by or furnished or available for the regular use of you or any 'family member', while it is in the custody of or being operated by you or any 'family member'." (ECF No. 24 ¶ 34 and ECF No. 28-2 ¶ 34 (emphasis added).)

　　　　This endorsement unambiguously states that it only applies to "any covered auto." While the 2013 Toyota Tacoma is a "private passenger type" auto, it was never a "covered auto" because it was never identified in Item Three of the Declarations and never fell within the scope of Covered Autos Symbol 7. Moreover, because Allen Dunn owned the 2013 Toyota Tacoma, it cannot be a non-owned "covered auto" within the meaning of paragraph A.2.b above in the endorsement, such

as to extend "insured" status to a "family member" using it. Lastly, paragraph A.2.b. above makes clear that "covered auto" status does not extend to any vehicle owned by any "family members" or "furnished or available" for the regular use of Allen Dunn or family members. The undisputed testimony in this matter is that the 2013 Toyota Tacoma was owned by Allen Dunn and furnished for the regular use of Eric Dunn, his mother, and Allen Dunn. As such, the endorsement also does not provide coverage in this matter.

The Preserver Policy is clear and unambiguous. It does not include coverage for the 2013 Toyota Tacoma. There is no room for any other interpretation of the Preserver Policy, there are no genuine issues of material fact, and there is no reason not to give the Preserver legal effect. *See Longobardi*, 582 A.2d at 1260. Accordingly, TIC's Motion for Summary Judgment (ECF No. 22) is **GRANTED** and NJM's Cross Motions for Summary Judgment (ECF Nos. 24-1, 26 and 27) are **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, NBIC's Motion for Summary Judgment (ECF No. 23) is **GRANTED**; TIC's Motion for Summary Judgment (ECF No. 22) is **GRANTED**; and all NJM's motions and cross motions (ECF Nos. 24-1, 25, 26, and 27) are **DENIED**.


**Date:** December 7, 2018                              */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**